UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AFFINITY BIOTECH, INC., § | | |
| Plaintiff § | | |
| § | | |
| VS. § | Case No. _____ | |
| § | | |
| THOMAS L. O'NEILL, § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Affinity Biotech, Inc, ("Affinity") files this complaint against Defendant Thomas L. O'Neill ("O'Neill"), and will show that:

### PARTIES

1.  Plaintiff **Affinity Biotech, Inc.**, is a Texas corporation with its principal place of business in Houston, Harris County, Texas.

2.  Defendant **Thomas L. O'Neill** is an individual who resides at 3753 Running Deer, Sebring, Florida 33872.

### JURISDICTION AND VENUE

3.  The Court has diversity jurisdiction over this matter because perfect diversity exists between the Affinity and O'Neill, and the amount in controversy exceeds $75,000. Venue is proper in the Houston Division Southern District of Texas because Affinity is a Texas corporation based in Houston, and the action involves duties owed by O'Neill to Affinity in his capacity as an employee, director, and shareholder.

**FACTS**

4. Hemophilia is a commonly-known, but rare, chronic disease that affects approximately 1 in 10,000 people in the United States, usually males. (Although carried by the female, active hemophilia in females is less prevalent.) The term hemophilia refers to a group of bleeding disorders in which it takes a long time for the blood to clot.

5. Although there is no cure for hemophilia, with treatment, many patients are able to lead relatively normal lives. The standard treatment involves replacing the missing clotting factor through intravenous ("IV") transfusions. The need for this treatment is life-long.

6. Affinity is a home IV infusion pharmacy established in January 2008. Affinity specializes in selling hemophilia factor products and ancillary goods and services to patients with hemophilia for treatment in their homes.

7. Because hemophilia is a chronic disease requiring ongoing treatment, Affinity's relationships with each of its customers is ongoing. Further, due to the very high cost of the medications that these patients require, the gain or loss of even one patient has a significant impact on the company's revenue.

8. Affinity developed confidential information and business development methods that enabled its business to grow quickly. This information, which is referred to herein as "the Confidential Information," includes:

      a. Customer lists;

      b. Pricing structure and strategies;

      c. Pharmaceutical manufacturers' and distributors' pricing structures;

      d. Contacts within healthcare insurance organizations;

      e. Lists of and contacts within organizations serving patients with hemophilia;

  f. Lists of and contacts within healthcare facilities serving patients with hemophilia;

  g. Marketing strategies; and

  h. Financial information.

9. In early 2009, O'Neill became Affinity's bookkeeper. Later that year, O'Neill became a shareholder, director, and President of Affinity. O'Neill's status as an employee was terminated "not for cause" in November 2012. O'Neill remains a 25% shareholder and a director of the company.

10. By virtue of his status with the company, O'Neill had, and continues to have, access to all of Affinity's Confidential Information. O'Neill also is in possession of a company computer that contains much of the Confidential Information. By virtue of his status with the company, O'Neill had an ongoing duty to maintain confidentiality of the Confidential Information and not to use it for personal gain. O'Neill also had, and continues to have, a duty not to usurp Affinity's business opportunities.

11. Before joining Affinity, O'Neill had served as bookkeeper for a pharmacy but had no familiarity with operating a specialty pharmacy, much less one that operates in Affinity's niche.

12. In spite of his continued affiliation with Affinity and resulting fiduciary duties owed to the company, on August 11, 2012, O'Neill, formed Midwest IV, LLC, ("Midwest IV") with the intention of competing directly against Affinity in the specialized marketing of medications to patients with hemophilia.

13. On November 13, 2012, Midwest IV registered to do business in the state of Missouri.

14. O'Neill failed to disclose these plans to Affinity. Affinity learned of them through the industry "grapevine." Only when confronted during a November 2012 shareholders' meeting in Houston, Texas, did O'Neill admit that he intends to compete against Affinity in its market niche.

15. On December 4, 2012, the Missouri Division of Professional Registration issued Midwest IV license number 2012040669.

16. Acting through Midwest IV, O'Neill has solicited and obtained the business of a number of hemophilia patients, at least some of whom were formerly Affinity customers. O'Neill did not present these business opportunities to Affinity or attempt to solicit the patients' business on behalf of Affinity. Had he done so, Affinity was ready and able to serve the customers. These actions by O'Neill and his entity were not incidental to the promotion of any corporate interest of Affinity.

17. If O'Neill, acting through Midwest IV or otherwise, continues to use Affinity's Confidential Information and to compete against the company in which he serves as a director, it is reasonably probable that Affinity will lose additional business opportunities and, possibly, lose existing customers. Further, the fact that an Affinity shareholder and director is directly competing against it is reasonably likely to damage Affinity's reputation in the hemophilia community and also to damage the morale of Affinity's employees.

## CAUSE OF ACTION:
## BREACH OF FIDUCIARY DUTY

18. Plaintiff re-alleges each allegation made above.

19. As a director, O'Neill owes Affinity and its other shareholders a duty to act only in their best interest. O'Neill's responsibility as a corporate fiduciary includes the dedication of

his uncorrupted business judgment for the sole benefit of the corporation, namely the duties of obedience, loyalty, and due care.  The duty of loyalty requires that O'Neill act in good faith and not allow his personal interest to prevail over the interest of the corporation. The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of O'Neill.  A corporate director is not at liberty to use confidential information to the detriment of the corporation to whom he owes a fiduciary duty. Further, as a corporate fiduciary, O'Neill was, and is, under an obligation not to usurp corporate opportunities for personal gain.

20. O'Neill has failed to fulfill his duty of loyalty to Affinity.  O'Neill used confidential information belonging to Affinity to establish and market a competing business, Midwest IV, while a remaining director of Affinity.  In doing so, O'Neill failed to meet the required standard of extreme measure of candor, unselfishness, and good faith.

21. Further, through his entity, Midwest IV, O'Neill has usurped business opportunities belonging to Affinity.  Specifically, Midwest IV has sought and obtained customers directly within Affinity's narrow market niche.

22. At no time was Affinity unable to take advantage of the business opportunities that O'Neill usurped.  Nor did Affinity, at any time, abandon its efforts to market and sell medications to hemophilia patients.

23. As an "interested" director, the burden of proof is on O'Neill to demonstrate that his actions are fair to Affinity.  They were not.  O'Neill's actions were unfair to Affinity.

24. Because O'Neill's breach of duty while a director has contributed to Affinity's loss, O'Neill will remain liable for continuing damage even should he no longer serve as a director.

25. **Actual damages.** As a result of O'Neill's breach of fiduciary duty, Affinity has been damaged and, if the use does not cease, will continue to be damaged. Affinity is entitled to recover its resulting losses, with interest.

26. **Disgorgement.** O'Neill has benefitted from his breach of fiduciary duty. Affinity is also entitled to disgorgement of O'Neill's profits, including those of Midwest IV.

27. **Exemplary damages.** Because Affinity's cause of action for breach of fiduciary duty is based, in part, in tort, Affinity is entitled to recover exemplary damages.

28. **Accounting.** Affinity seeks the equitable relief of an accounting so as to determine the extent to which O'Neill has profited by virtue of his breach.

## INJUNCTIVE RELIEF

29. Affinity is further entitled to injunctive relief to prevent O'Neill from usurping Affinity's business opportunities and from making further use of Affinity's Confidential Information. O'Neill, and those acting in concert with him, should be enjoined from:

   a. Marketing home IV infusion goods or services to hemophilia patients or facilities or groups that serve hemophilia patients;

   b. Accepting additional hemophilia patients as customers for home IV infusion goods and services; and

   c. Using or disclosing Affinity's Confidential Information.

To be clear, Affinity does not seek to enjoin O'Neill or others from operating or marketing a general pharmacy or a pharmacy that specializes in any area other than Affinity's niche of selling to hemophilia patients.

30. **Imminent harm.** The harm to Affinity is imminent. O'Neill is already operating his competing business and will continue to do so unless enjoined by this Court.

31. **Irreparable harm for which there is no adequate remedy at law.** The potential harm to Affinity is irreparable and not remediable at law. The mere fact that an Affinity director is competing against it will be damaging to the company's reputation in the hemophilia community, Affinity's primary market. Monetary damages are inadequate to remedy the potential damage to the company's reputation.

32. **Balance of hardships.** The balance of hardships favors injunctive relief. The potential damage to Affinity from continued competition by one of its own directors, and the potential further use and disclosure of its Confidential Information far outweighs any hardship to O'Neill by refraining from using the Confidential Information and from competing against Affinity in its market niche. As noted above, Affinity does not seek to enjoin O'Neill from competing in any other market sector. Further, O'Neill continues to receive the shareholder distributions from Affinity.

33. **Effect on the public interest.** The public interest is best served by the requested injunctive relief. No harm to the public would result from the injunction. Enjoining O'Neill now is less disruptive than waiting for him to further breach and attempt a remedy at that time. It is possible that customers would be subjected to the inconvenience of multiple changes in their pharmacy providers.

FOR THESE REASONS, Plaintiff Affinity Biotech, Inc., respectfully requests that, the Court issue a permanent injunction that orders the following:

 a. Thomas L. O'Neill, and those acting in concert with him (expressly including Midwest IV, LLC), are permanently enjoined from marketing home IV infusion goods or services to hemophilia patients or facilities or groups that serve hemophilia patients;

 b. Thomas L. O'Neill, and those acting in concert with him (expressly including Midwest IV, LLC), are permanently enjoined from accepting

    additional hemophilia patients as customers for home IV infusion goods and services; and

    c. Thomas L. O'Neill, and those acting in concert with him (expressly including Midwest IV, LLC), are permanently enjoined from using or disclosing Affinity's Confidential Information.

Affinity further requests that it recover its lost profits, with interest, that it have disgorgement and recovery of O'Neill's wrongfully-obtained profits, that Affinity recover exemplary damages, and that Affinity have such other and further relief to which it justly may be entitled.

        Respectfully Submitted,

        */s/ Donald W. Gould, II*
        Texas Bar No. 08234250
        Attorney-in-Charge for
        Plaintiff Affinity Biotech, Inc.

        JOHNSON DELUCA KURISKY & GOULD
        A PROFESSIONAL CORPORATION
        4 Houston Center
        1221 Lamar Street, Suite 1000
        Houston, Texas 77010
        (713) 652-2525 - telephone
        (713) 652-5130 - facsimile

OF COUNSEL:

Bradley L. DeLuca
Texas Bar No. 05653800
Charles Patrick Waites
Texas Bar No. 00791867
JOHNSON DELUCA KURISKY & GOULD
A PROFESSIONAL CORPORATION
4 Houston Center
1221 Lamar Street, Suite 1000
Houston, Texas 77010
(713) 652-2525 - telephone
(713) 652-5130 – facsimile

Counsel for Plaintiff Affinity Biotech, Inc.